R. L. SMITH, EXECUTOR OF M. F. NESBIT, DECEASED, v. W. F. SMITH,
J. T. SMITH ET AL.

(Filed 8 December, 1926.)

**Wills—Devise—Shares of Stock—Specific and General Legacies.**

> Whether the accretions of stock dividends are to go under a devise
> of the original shares to the person specified therein, depends under a
> correct interpretation of the related items of a will upon whether the
> devise is general or specific, and where so construed the identity of the
> shares bequeathed to the specific beneficiaries and owned by the testator
> at the time, is established, the devise is specific and the accretions ac-
> companying it are a part of the gift itself.

CIVIL ACTION, before *Bryson, J.,* at May Term, 1926, of IREDELL.

M. F. Nesbit, the testator, died during the year 1907. The plaintiff,
R. L. Smith, duly qualified as executor of the estate of said decedent.
The wife of said testator, Frances E. Nesbit, died 29 December, 1925.

At the time of his death the testator owned sixty shares of the capital
stock of the Mooresville Cotton Mills. In January, 1917, and subsequently
thereto, said Mooresville Cotton Mills declared stock dividends, which
have been delivered to the executor, until there are now three hundred
and sixty shares of common stock of said mill and twenty shares of pre-
ferred stock. Upon the death of the widow, Mrs. Frances E. Nesbit, in
1925, the legatees to whom said stock was bequeathed by the testator,
claimed the stock together with the dividends. The residuary legatees
claimed the stock dividends upon the theory that the legacies were
general and not specific.

The pertinent portions of the will of the testator are as follows:

"I, M. F. Nesbit, of the county and State aforesaid, being of sound
mind, but considering the uncertainty of my earthly existence, do make
and declare this my last will and testament. . . .

"4th. I give, bequeath and devise unto my wife, Frances E. Nesbit,
all the balance and residue of my estate, wherever situated, and what-
ever it may consist of, whether real, personal or mixed, to hold during
her natural life, said income to be hers absolutely. I further direct
that in the event the income therefrom shall not be sufficient to provide
for all her comforts and necessities, then my executor is hereby author-
ized to sell so much of my estate as is hereby devised and bequeathed
by this item as shall be necessary to meet the demands for the necessity
and comfort of my said wife.

"5th. I will and direct that all my property shall remain as it is now
under the direction of my wife, Frances E. Nesbit, so long as she shall
live, and after her death, my property shall be distributed as provided
in the items following: . . .

"10th. I bequeath unto Nannie Lee Kerr Nesbit twenty shares of the capital stock of the Mooresville Cotton Mills, Mooresville, N. C.

"11th. I bequeath unto Alice Lee Nesbit Neikirk ten shares of the capital stock of the Mooresville Cotton Mills, Mooresville, N. C.

"12th. I bequeath unto my nephew, Fred Nesbit Porter, ten shares of the Mooresville Cotton Mills, Mooresville, N. C.

"13th. I bequeath to Barron P. Smith ten shares of the Mooresville Cotton Mills, Mooresville, N. C.

"14th. I bequeath unto my nephew, Lee Parker, ten shares of the Mooresville Cotton Mills, Mooresville, N. C. . . .

"19th All the balance and residue of my estate, after the death of my wife, Frances E. Nesbit, shall be equally divided among Margaret Smith, Euphemia Parker, Mary Nesbit, the children of Isabella Kerr, deceased, are to get only so much under this will as their mother would have gotten were she living, this being one-sixth of the radius of my estate, Robert Porter and Janie Porter. All the real estate remaining shall be sold by. my executor and the money equally divided as provided in this item.

"20th. It is distinctly understood, and I do hereby direct, that no devise nor bequeath made under this will and testament, to any person other than my wife, Frances E. Nesbit, shall take effect nor be operated until the death of my said wife, Frances E. Nesbit.

"21. I hereby constitute and appoint my nephew, R. L. Smith, my lawful executor to all intents and purposes, to execute my last will and testament, according to the true intent and meaning of same, and every part and clause thereof—hereby revoking and declaring utterly void all other wills and testaments made by me heretofore."

This action was brought by the executor to have said will construed, and *Bryson, J.,* rendered the following judgment:

"This cause coming on to be heard before his Honor, T. D. Bryson, judge, and jury, and the jury for their verdict having answered the issues submitted to them in favor of the plaintiff, as set out in the record.

"The parties to this action, the same being for the interpretation of the will of M. F. Nesbit, deceased, having agreed that the case may be heard upon the facts as stated in the plaintiff's complaint, as an agreed case, which agreement appears in the record.

"It is therefore considered, ordered and adjudged upon the verdict of the jury, that M. F. Nesbit, the testator, bequeathed a one-sixth of the residue of his estate to Jane Porter Byrum, as alleged in the complaint.

"That upon the facts agreed, as set forth in the complaint, it is considered, ordered and adjudged ·that the 20 shares of the capital stock of the Mooresville Cotton Mills bequeathed to Nannie Lee Kerr Nesbit

in item 10 of the will is the property of the said Nannie Lee Kerr Nesbit, and all stock dividends declared thereon, as set forth in the complaint; that the ten shares of the capital stock of the Mooresville Cotton Mills, mentionéd in item eleven of said will and the stock dividend of said corporation as set forth in the complaint is the property of the heirs at law of the said Alice L. Nesbit Neïkirk; that the ten shares of the stock of the Mooresville Cotton Mills bequeathed to Fred Nesbit Porter under the twelfth item of said will, and the stock dividends declared thereon, as alleged in the complaint, is the property of the heirs at law of the said Fred Nesbit Porter, deceased, as set forth in the complaint; that the ten shares of the capital stock of the Mooresville Cotton Mills, bequeathed to Barron P. Smith in the thirteenth item of said will, and the stock dividends issued thereon by said corporation, is the property of the said Barron P. Smith, as alleged in the complaint; that the ten shares of the capital stock of the Mooresville Cotton Mills, bequeathed to Lee Parker in item 14 of said will was revoked, and said ten shares of stock by the codicil to said will was bequeathed to F. E. Nesbit, and that the said F. E. Nesbit is the owner of said stock and the stock dividends declared thereon, as set forth in the complaint.

"It is further considered, ordered and adjudged that R. L. Smith, executor of M. F. Nesbit, deceased, who holds the stock dividends, aforesaid, as executor aforesaid, shall cause the same to be transferred and delivered to the above-named defendants, according to their respective interests, as hereinabove declared were entitled to the original shares of stock and the stock dividends declared thereon.

"The cost of the action to be taxed against R. L. Smith, executor of M. F. Nesbit, deceased, by the clerk of this court."

From the foregoing judgment the defendants, residuary legatees, appeal.

*Turner & Turner* for plaintiffs.
*Armfield, Sherrin & Barnhardt* for defendants, residuary legatees.

BROGDEN, J. Are the legacies of stock contained in Items 10, 11, 12, 13 and 14 of the will specific or general?

If they are general legacies the stock dividends would constitute a part of the general estate of the testator, and, after the administration of the estate, pass to the residuary legatees. If, upon the other hand, the legacies are specific, the legatees named are entitled to said stock dividends by virtue of the fact that said stock dividends are accretions to the stock bequeathed by the testator. "Specific legacies carry with them all accessions by way of dividend or interest that may accrue after

the death of the testator, unless the will specifies otherwise." *Palmer v. Palmer's Est.,* 75 Atlantic, 130; *Perry v. Leslie,* 126 Atl., 340; *Gordon v. James,* 86 Miss., 719; 1 L. R. A. (N. S.), 461.

In *Graham v. Graham,* 45 N. C., 297, *Battle,* J., defined a general legacy as follows: "A legacy is said to be general when it is so given as not to amount to a bequest of a specific part of a testator's personal estate; as a sum of money; generally or out of the testator's personal estate and the like. 1 Roper on Leg., 256. In the same case a specific legacy was defined as follows: 'A specific legacy is defined to be "the bequest of a particular thing or money specified and distinguished from all other of the same kind, as of a horse, a piece of plate, money in a purse, stock in the public funds, a security for money, which would immediately vest with the assent of the executor." ' 1 Roper on Leg., 149. A specific legacy has been further defined as 'one that can be separated from the body of the estate and pointed out so as to individualize it, and enable it to be delivered to the legatee as a thing *sui generis.* The testator fixes upon it, as it were, as a label, by which it may be identified and marked for delivery to the owner.' " *Harper v. Bibb,* 47 Ala., 547.

In determining whether a legacy of shares of stock is specific or general, the whole will must be considered and not merely the clause containing the gift or legacy. *Blair v. Scribner;* 57 Atl., 324; *McGuire v. Evans,* 40 N. C., 269; *Graham v. Graham,* 45 N. C., 297; *Perry v. Leslie,* 126 Atl., 340.

The definitions of the terms are well settled, but the difficulty arises in applying the definitions to a given state of facts. "The leaning of the courts is against construing doubtful terms into a specific gift, because the gift is lost upon the failure of the fund, from any cause; and also, because it is not subject to the equitable principle of equality by abatement. It must be clear, therefore, upon the will, that nothing is meant but a particular thing, or a part of a particular thing, existing in specie at the making of the will or when it is to take effect. If the words will be satisfied by any thing of the same kind, not owned by the testator, the legacy is general. The difference may be illustrated by the common case of a contract to sell and deliver goods of a common kind, say one hundred barrels of corn, upon which the remedy is by action for damages for not delivering, and a contract to sell a certain hundred barrels, as a distinct parcel in a crib, which vests the property, and gives trover or detinue upon refusal to deliver." *Ruffin, C. J., Perry v. Maxwell,* 17 N. C., 503.

There are, however, certain well defined indicia of specific legacies. These may be classified as follows:

1. The testator must actually own the property bequeathed at the time the will is made. *Heath v. McLaughlin,* 115 N. C., 398.

2. The property must be described as belonging to the testator. This ownership is usually expressed by such words as "my," "standing in my name," "in my possession," "which I now hold," "owned by me." *Perry v. Maxwell,* 17 N. C., 503; *Davis v. Cain,* 36 N. C., 309; *Howell v. Hooks,* 39 N. C., 188; *McGuire v. Evans,* 40 N. C., 269; *In re Wiggins,* 179 N. C., 326; *Kearns v. Kearns,* 76 Atl., 1042; *Rogers v. Rogers,* 48 S. E., 176.

In applying the pertinent principles established by the authorities, it is necessary to inquire whether or not there are any words in the will bearing upon the legacy which are indicative of present ownership or possession of the stock bequeathed. The word "my," which has been held to be sufficient to designate a specific legacy, receives its force from the fact that it indicates present ownership or possession of the thing bequeathed. Therefore, it is necessary to determine whether or not there are words in the will indicating present ownership or possession of the stock bequeathed by the testator.

Item 5 of the will is as follows: "I will and direct that all *my property* shall remain as it is now under the direction of my wife, Frances E. Nesbit, so long as she shall live, and after her death *my property* shall be distributed as provided in the items following." The items in which the stock in the Mooresville Cotton Mills were bequeathed are "items following," to wit, 10, 11, 12, 13 and 14 of the will. Obviously, item 5 must be read in connection with items 10, 11, 12, 13 and 14 of the will. Thus, it would seem clear that in item 5 the references to "my property" indicate that the testator owned the stock in the Mooresville Cotton Mills at that time and was in possession thereof and intended that it should vest in the legatees named upon the death of his wife, Frances E. Nesbit.

The defendants rely upon the case of *McGuire v. Evans,* 40 N. C., 269. In that case the testator bequeathed "twenty shares of capital stock of the Bank of Cape Fear" to John K. McGuire. *Nash, J.,* speaking for the Court, says: "If the answer to this question depended alone upon the words used in making the bequest, we should, without hesitation, pronounce the legacies general. . . . To render such a bequest specific, it is essential that the testator, in the will, in connection with the bequest, should refer to the stock he then has, or express the intention, that it should come out of that stock. If such intention does clearly appear from the will itself, his intention will make the bequest specific."

In the *McGuire case, supra,* the Court held that the bequest of twenty shares of the capital stock of the Bank of Cape Fear, in the third clause

of the will, was made specific by language appearing in the fourteenth clause thereof. After referring to the fourteenth clause of the will, *Justice Nash* says: "There can be no doubt what stock the testator meant. He meant, evidently, the stock he then had; and if so, they are specific legacies—not general." *Heath v. McLaughlin,* 115 N. C., 398.

Our conclusion is, upon the whole record, that the legacies of stock in the Mooresville Cotton Mills were specific, and that the stock dividends accruing upon said shares belong to the legatees named.

Affirmed.